**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JON BOWERS; LYNNA BOWERS; A. L.
BRUNER; MARILYN BRUNER; ROBERT
FERNS; MILTON GORDEN; KATHLEEN
GORDEN; MORTON GOSSETT;
CHARLES N. HILKEY, Jr.; LINDA
JONES; JAMES LAVIA; MARCIA
LAVIA; DONALD LITCHFIELD;
MELISSA LITCHFIELD; JERRY
McCAULEY; KATHLEEN McCAULEY;
IRMA PAYNE; HAROLD PAYNE;
WALTER PHILLIPS; LYLE WOODCOCK,
          *Plaintiffs-Appellants,*

v.

RICHARD WHITMAN; STATE OF
OREGON DEPARTMENT OF LAND
CONSERVATION AND DEVELOPMENT,
          *Defendants-Appellees.*

No. 10-35966

D.C. No.
1:09-cv-03082-PA

CITIZENS FOR CONSTITUTIONAL
FAIRNESS, an Oregon nonprofit
corporation; PACIFIC WESTERN OF
MEDFORD, L.L.C.; DUANE CROSS;
BUD KAUFMAN; GARY WIRTH;
DOUGLAS STURGEON; CARL
OFFENBACHER; DOROTHY LIPPKE;
GARY LEWELLYN; ORVILLE EARY;
JOSEPH DAUENHAUER; MYRON
CORCORAN; ESTHER A. CORCORAN;
JAMES COCHRAN; ACE CARTER;
GORDON S. ANDERSON; DON
ROWLETTE; AL GRAY; KEN BIGHAM;
ARNOLD CROSS; MARALOU CROSS;
MARIONANN KAUFMAN; CROSS &
KAUFMAN LOGGING,
   *Plaintiffs-Appellants,*

    and

VELDA DICKEY,
      *Plaintiff,*

    v.

JACKSON COUNTY, a political
Subdivision of the State of
Oregon; DANNY JORDAN,
   *Defendants-Appellees.*

No. 10-36029

D.C. No.
1:08-cv-03015-PA

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

Argued and Submitted
October 12, 2011—Portland, Oregon

Filed January 12, 2012
Amended February 28, 2012

Before: David M. Ebel,* Marsha S. Berzon, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

---

*The Honorable David M. Ebel, Senior Circuit Judge for the Tenth Circuit, sitting by designation.

---

**COUNSEL**

Jack Herbert Swift, Grants Pass, Oregon, for the Bowers plaintiffs-appellants.

Jack Herbert Swift, Grants Pass, Oregon (briefed and argued); William L. Bernard, Pueblo, Colorado (argued), for the Citizens plaintiffs-appellants.

G. Kevin Kiely, Cable Huston Benedict Haagensen & Lloyd LLP, Portland, Oregon (briefed); George F. Hammond, Medford, Oregon (briefed and argued), for the Richard Whitman, et al. defendants-appellees.

Stephanie L. Striffler, Oregon DOJ, Salem, Oregon, for the Jackson County defendant-appellee and the state of Oregon amicus defendant-appellee.

---

**ORDER**

The Opinion filed January 12, 2012, slip op. 237, is amended as follows:

1. At slip op. 249; line 14. After <the right without committing a constitutional taking.>, include a footnote with the following text:

> <We are aware that some of the Oregon state courts' decisions indicate that Measure 37 waivers constitute

protected property interests. *See Corey v. Dep't of Land Conservation & Dev.*, 152 P.3d 933 (Or. Ct. App. 2007); *Emmel v. Dep't of Land Conservation & Dev.*, 162 P.3d 354 (Or. Ct. App. 2007). However, these cases merely determined whether Plaintiffs were entitled to procedural due process. *See Corey*, 152 P.3d at 938 ("[P]etitioners have a protected property interest in the waivers. Consequently, they were entitled to notice and a meaningful hearing before [the Department of Land Conservation and Development] could deny them the waivers." (citation omitted)); *Emmel*, 162 P.3d at 356 ("[I]n the context of a Measure 37 claim, we concluded in *Corey* that, because the claimant had established her entitlement to compensation or waiver, she had the constitutional right to a hearing regarding the extent of her entitlement."). These cases are thus inapposite to whether claims of entitlement under Measure 37 have vested under the Takings Clause.>.

With this amendment, the panel has voted unanimously to deny the petition for panel rehearing. Judge Berzon and Judge Smith voted to deny the petition for rehearing en banc, and Judge Ebel so recommends.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing will be accepted.

---

## OPINION

N.R. SMITH, Circuit Judge:

In this consolidated appeal, we determine whether the State of Oregon and Jackson County (collectively Oregon) commit-

ted a constitutional taking, violated Plaintiffs' due process rights, or violated Plaintiffs' equal protection rights when Oregon voters enacted Measure 49 to replace and modify remedies available under the previous Measure 37. We conclude that Oregon did not commit a constitutional taking when it modified the remedies available under Measure 37, because any potential property interest that Plaintiffs had for compensation or a specific type of land use under Measure 37 had not vested. Measure 49 also does not contravene substantive due process, because it does not implicate fundamental rights. For this reason, and also because the regulatory classification under Measure 49 is not based on a suspect class, Measure 49 also survives rational basis scrutiny and has not violated Plaintiffs' equal protection rights. Therefore, we **AFFIRM** the district court.

## FACTS

### 1. Measure 37

In 2004, Oregon voters passed Measure 37, originally codified at Or. Rev. Stat. § 197.352 (2005), through the initiative process. Measure 37 required "state and local governments to compensate private property owners for the reduction in the fair market value of their real property that results from any land use regulations of those governmental entities that restrict the use of the subject properties." *MacPherson v. Dep't of Admin. Servs.*, 130 P.3d 308, 312 (Or. 2006). Thus, for those who qualified, Section One of Measure 37 authorized a public entity to award "just compensation" to landowners if that entity enforced land use regulations that reduced the fair market value of the landowners' property, even if such reduction did not constitute a "taking." § 197.352(1).

Section Six provided the claimant with a statutory cause of action in state court for the recovery of that compensation, if the subject land use regulation continued in force for 180 days

after claim was made. § 197.352(6). Sections Eight and Ten of the Act provided to the claimed-upon-government entity an ability to avoid payment of monetary compensation by granting that entity the authority to modify, remove, or not apply the subject land use regulation. § 197.352(4). If a public entity chose this option within 180 days of a property owner submitting a demand, no entitlement to monetary compensation arose under the statute. The second option, to exempt property from otherwise applicable regulations and allow a specified use, colloquially became known as a "Measure 37 waiver." *Damman v. Bd. of Comm'rs of Yamhill Cnty.*, 250 P.3d 933, 935 (Or. App. 2011).[1] These Measure 37 waivers "allow[ed] the owner to use the property for a use permitted at the time the owner acquired the property." § 197.352(8).

Thousands of such claims were filed statewide, with Jackson County alone validating approximately 571 such claims. Most property owners in Oregon, who pursued a remedy under Measure 37, received Measure 37 waivers from their local governments, not monetary compensation. A Measure 37 waiver provided that the regulations at issue in the property owners' claims would not be applied to their property.

## 2.  Measure 49

During the 2007 legislative session, the state legislature referred Measure 49 to the voters. This measure also passed and has been codified as the current Or. Rev. Stat. §§ 195.300 to 195.336 (2007). The Oregon Supreme Court examined the text and context of Measure 49 and found that it "conveys a

---

[1]We will continue to refer to this option for the government as a "waiver," because that is how the state of Oregon characterizes it. Although the text of Measure 37 does not refer to waivers, Measure 49 defines "waiver" as "an action or decision of a public entity to modify, remove or not apply one or more land use regulations . . . to allow the owner to use property for a use permitted when the owner acquired the property." Or. Rev. Stat. § 195.300(24) (2007). We note that the term "waiver" typically has legal significance not applicable here.

clear intent to extinguish and replace the benefits and procedures that Measure 37 granted to landowners." *Corey v. Dep't of Land Conservation & Dev.*, 184 P.3d 1109, 1113 (Or. 2008). The court went on to observe that "Measure 49 extensively amends [Measure 37] in a way that wholly supersedes the provisions of Measure 37 pertaining to monetary compensation for and waivers from the burdens of certain land use regulations under that earlier measure." *Id.*

Of greatest importance to this case, Measure 49 undertook to change the remedies available to property owners who had already begun the process of pursuing relief under Measure 37. Measure 49 replaced the process, the approval standards, and the extent of the relief (if any). Measure 49 also removed some of the benefits previously available, including monetary relief and waivers allowing commercial or industrial development. §§ 195.305, 195.310. Measure 49, however, exempted a property owner from pursuing compensation pursuant to the new provisions in Measure 49 if the property owner had "a common law vested right . . . to complete and continue the use described in the waiver." *Compiled as a note after* § 195.305. Measure 49 does not mandate any particular process for establishing vested rights. Claimants seeking a vested rights determination generally either applied for a local decision or sued for a declaratory judgment.

According to Oregon, whether a landowner has a vested right to complete development of property (even though the law has changed) turns on whether the landowner's "commencement of the construction . . . [has] been substantial, or substantial costs toward completion of the job . . . have been incurred." *Clackamas Cnty. v. Holmes*, 508 P.2d 190, 192 (Or. 1973)). In *Holmes*, the Oregon Supreme Court held that whether a landowner's right vests turns on the facts of each case, and the court set forth a list of factors for analyzing those facts. *Id.*

### 3. Plaintiffs' Claims

All of the Citizens for Constitutional Fairness *et al.* Plaintiffs and the Bowers *et al.* Plaintiffs (collectively Plaintiffs)[2] are owners of real property in the State of Oregon, who submitted written demands for compensation under Measure 37 and received timely waivers. None of these individual plaintiffs have recovered any monetary compensation, and, because of Measure 49, none have been able to proceed with any development of their land under the waivers granted.

## PROCEDURAL HISTORY

### 1. Citizens Case

Citizens Plaintiffs initially brought this action against Jackson County in relation to Measure 49, which amended prior Ballot Measure 37 and replaced the relief previously available to Citizens under that statute. Citizens Plaintiffs' complaint raised several causes of action, two of which are relevant to this appeal. In their fifth cause of action, Citizens Plaintiffs asserted that waivers granted to them by the County under Measure 37 constituted binding contracts, protected by the Contracts Clause of the United States Constitution. Citizens Plaintiffs' sixth cause of action asserted that, pursuant to Measure 37, they had gained an accrued cause of action for monetary compensation, which was a property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution.

On summary judgment, the district court held that the Measure 37 waivers were contracts that could not be impaired pursuant to the Contracts Clause and, in the alternative, they were judgments that could not be impaired under the doctrine of the separation of powers. The County appealed, and we reversed,

---

[2]Plaintiffs will be referred to separately as Citizens Plaintiffs and Bowers Plaintiffs only when necessary.

ruling that Measure 37 waivers are neither contracts nor court judgments implicating separation of powers issues. *Citizens for Constitutional Fairness v. Jackson Cnty.*, 388 F. App'x 710, 711 (9th Cir. 2010). The district court then concluded that our decision disposed of the remainder of the Citizens Plaintiffs' claims and dismissed the case. The Citizens appeal promptly followed.

### 2. Bowers Case

Before any decision was rendered on the first Citizens appeal, different claimants brought another suit in the district court in the Bowers case. The Bowers Plaintiffs are all Measure 37 claimants. They sued the Department of Conservation and Development Commission and Director Whitman, seeking damages and declaratory relief against enforcement of Measure 49. Bowers Plaintiffs alleged five causes of action, the first three of which remain at issue in this appeal.

First, Bowers Plaintiffs alleged that there had been a "taking" of protected property in violation of the Fifth Amendment due process clause. Bowers Plaintiffs asserted that those property interests were "statutory rights to monetary compensation," "vested and accrued claim[s] for compensation," "legal entitlements . . . in lieu" of monetary compensation, or "Measure 37 waivers and the entitlement to monetary compensation." Second, Bowers Plaintiffs alleged that Measure 49 violates equal protection guarantees under the Fourteenth Amendment. Third, Bowers Plaintiffs alleged that Measure 49 violates substantive due process under the 14th Amendment.

After *Bowers* was filed, this court issued its opinion in the first Citizens appeal, holding that the Measure 37 waivers were not court judgments or contracts. Relying on our decision, the district court granted the motion for summary judgment in the Bowers case and dismissed the remaining claims against Whitman in an order and judgment. The Bowers appeal followed.

## ANALYSIS

In these cases, the Plaintiffs do not identify any disputed facts below in their briefs. Accordingly, these cases appeal only the district court's conclusions of law, which we review *de novo*. *DirecTV, Inc. v. Webb*, 545 F.3d 837, 842 (9th Cir. 2008).

### A. The enactment of Measure 49 did not effect a constitutional taking of Plaintiffs' potential property interests created under Measure 37.

**[1]** "We use a two-step analysis to determine whether a [constitutional] 'taking' has occurred: first, we determine whether the subject matter is 'property' within the meaning of the Fifth Amendment and, second, we establish whether there has been a taking of that property, for which compensation is due." *Enquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008).

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

In some cases, the Supreme Court has recognized property rights that were constitutionally protected, such that they were safeguarded by due process, but still not vested, and thus the government could take away these interests so long as it provided proper procedures. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593 (1972); *Goldberg v. Kelly*, 397 U.S. 254 (1970). But in other cases, constitutionally protected property rights were held to have vested and thus became cognizable under the Takings Clause, such that the government could not remove the right without providing just compensation. *See United*

*States v. Sioux Nation*, 448 U.S. 371, 414-15, 424 (1980) (holding that the government could not enact legislation to take back land it had expressly given to the Sioux Nation without committing a constitutional taking); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164-65 (1980) (holding that the state's confiscation of the interest accrued on interpleader funds was a constitutional taking); *Lynch v. United States*, 292 U.S. 571, 576 (1934) (holding that the government could not avoid payment of its commitment to pay disability and life insurance by enacting a statute repealing the laws granting the benefit without committing a constitutional taking); *see also* Black's Law Dictionary 1324 (7th ed. 1999) (defining a vested right as "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent").

**[2]** In the present case, we assume without deciding that the procedure provided through the ballot initiative was sufficient to satisfy any procedural due process requirements, because this issue is not contested by the Plaintiffs.[3] Thus, the critical issue is whether Plaintiffs' Measure 37 property interests have vested such that Oregon could not remove or modify the right without committing a constitutional taking.[4] After

---

[3]Though Bowers Plaintiffs appear to assert a procedural due process claim on appeal, they renounced any procedural due process claim in their opposition to Whitman's motion to dismiss. Even if Plaintiffs had not abandoned this claim, the process provided in this case was sufficient because "[w]hen a state alters a state-conferred property right through a legislative process, the legislative determination provides all the process that is due." *Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997) (internal quotation marks omitted).

[4]We are aware that some of the Oregon state courts' decisions indicate that Measure 37 waivers constitute protected property interests. *See Corey v. Dep't of Land Conservation & Dev.*, 152 P.3d 933 (Or. Ct. App. 2007); *Emmel v. Dep't of Land Conservation & Dev.*, 162 P.3d 354 (Or. Ct. App. 2007). However, these cases merely determined whether Plaintiffs were entitled to procedural due process. *See Corey*, 152 P.3d at 938 ("[P]etitioners have a protected property interest in the waivers. Conse-

review, we conclude that such property interests have not vested.

**[3]** To determine whether a property interest has vested for Takings Clause purposes, "the relevant inquiry is the certainty of one's expectation in the property interest at issue." *Engquist*, 478 F.3d at 1002. We noted in *Engquist* that, if the property interest is "contingent and uncertain" or the receipt of the interest is "speculative" or "discretionary," then the government's modification or removal of the interest will not constitute a constitutional taking. *Id.* at 1003-04. For multiple reasons, Plaintiffs have not sufficiently demonstrated certain expectations in their Measure 37 property interests to trigger Takings Clause protection.

**[4]** At the outset, we emphasize that Plaintiffs failed to articulate any clear characterization of the exact property interest to which they are entitled. Their descriptions range from an accrued cause of action to a right to monetary compensation derived from a statutory entitlement to the right to use their land consistent with Oregon's decision to not regulate their property under Measure 37. When pressed at oral argument on whether a ruling in the Plaintiffs' favor would have entitled them to money or to land use rights, the Plaintiffs were unable to provide a clear answer and argued essentially for both. The Plaintiffs' inability to characterize their requested relief reflects the uncertainty of the property interests upon which they rely. Neither have Plaintiffs' claims

---

quently, they were entitled to notice and a meaningful hearing before [the Department of Land Conservation and Development] could deny them the waivers." (citation omitted)); *Emmel*, 162 P.3d at 356 ("[I]n the context of a Measure 37 claim, we concluded in *Corey* that, because the claimant had established her entitlement to compensation or waiver, she had the constitutional right to a hearing regarding the extent of her entitlement."). These cases are thus inapposite to whether claims of entitlement under Measure 37 have vested under the Takings Clause.

vested under any of the various characterizations of the Measure 37 waiver that the Plaintiffs set forth.

### 1. Accrued Cause of Action

**[5]** Plaintiffs, at some junctures, have maintained that their Measure 37 property interest is an accrued cause of action that has been unconstitutionally taken from them by Measure 49. "We have squarely held that although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) (quoting *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001) (internal quotation marks omitted); *see also Fields v. Legacy Health Sys.*, 413 F.3d 943, 956 (9th Cir. 2005) ("Causes of action are a species of property protected by the Fourteenth Amendment's Due Process Clause. However, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained.") (citation, internal quotation marks, and emphasis omitted). The reason an accrued cause of action is not a vested property interest for Takings Clause purposes until it results in a "final unreviewable judgment," is that it is inchoate and does not provide a certain expectation in that property interest. *Id.* (citing *Austin v. City of Bisbee*, 855 F.2d 1429, 1435 (9th Cir. 1988) (explaining that, although a cause of action is a species of property, "it is inchoate and affords no definite or enforceable property right until reduced to final judgment" (internal quotation marks omitted)).

**[6]** As we held in the previous interlocutory appeal in the *Citizens* case, the waivers provided under Measure 37 "were administrative decisions, not court judgments." *Citizens for Constitutional Fairness v. Jackson Cnty.*, 388 F. App'x. at 711. The question, then, is whether those decisions imparted a certainty that property owners were entitled to a particular use of their property, to compensation, or to some other prop-

erty interest cognizable under the Takings Clause. Cf. *Engquist*, 478 F.3d at 1003. We conclude that they did not.

**[7]** The waivers stated that particular land use regulations would not be applied, but this statement did not entitle waiver recipients to develop their property in any particular way. Any development required approval from the requisite governmental bodies as well as, in many, if not all, cases, a waiver from the state of Oregon. Indeed, all of the waivers in the record state that "Jackson County does not promise Claimant(s) that Claimant(s) will eventually be able to put the property to any particular use."[5]

**[8]** Further, the waivers were not self-enforcing. They did not, for example, specify a particular amount of compensation to be paid if a municipality continued to apply a waived land use regulation. Instead, in such a circumstance, a property owner's only recourse was "a cause of action" in Oregon state court. Thus, Plaintiffs here had, at most, a cause of action, not a final judgment. Their right to sue was therefore not a property interest protected by the Takings Clause.

### 2.   Statutory Entitlement

Plaintiffs have also characterized their property right as a vested statutory entitlement to compensation, or the equivalent of compensation. We have recognized that "[t]here is no question that claims for compensation are property interests that cannot be taken for public use without compensation." *In re Aircrash in Bali, Indon.*, 684 F.2d 1301, 1312 (9th Cir. 1982). But in that case, we held that whether the claim had vested, such that the government's interference with the claim constituted a taking, "turn[ed] on questions of degree." *Id.*

---

[5]The Plaintiffs noted in oral argument that the text of Measure 37 waivers varied from county to county. However, no other waivers appear in the record, and at oral argument the Plaintiffs suggested that Jackson County's waivers were representative of the other waivers.

This echoes the rule in *Engquist*, that vesting is determined based on "certainty of expectations." 478 F.3d at 1003.

**[9]** The Supreme Court has required a high threshold of certainty before finding that an entitlement had vested. For instance, the Court has recognized this certainty where the plaintiffs had paid consideration for their entitlement, *Lynch*, 292 U.S. 571, or where the government made an explicit promise that the property interest would not be taken away, *Sioux Nation*, 448 U.S. 371. However, the Supreme Court has not recognized a vested right in the area of social security benefits or retirement benefits benevolently given. *See U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 174 (1980) (upholding the government's ability to alter benefits under a railroad retirement plan); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575-576 (1979) (finding that "Congress may alter, and even eliminate" railroad retirement and Social Security benefits "at any time"); *see also Flemming v. Nestor*, 363 U.S. 603, 608-611 (1960) (upholding Congress's ability to alter Social Security benefits).

**[10]** Plaintiffs' claim of entitlement does not contain the necessary certainty of expectation for multiple reasons. First, in the present case, Measure 37 waivers clearly did not constitute an express and unequivocal promise by Oregon to provide compensation, because Oregon had the option of providing either compensation *or* removing certain land use regulations. Thus, no monetary commitment was unequivocally made. Furthermore, as noted, the waivers themselves explicitly disclaimed a claimant's right to any particular land use. Thus, Oregon's option of waiving the application of specific land use regulations was also not an unequivocal grant of an unfettered right. Finally, as we held in the previous interlocutory appeal, Measure 37 waivers were not contracts, nor were they evidence of a contract between the property owners and the county. *See Citizens for Constitutional Fairness v. Jackson Cnty.*, 388 F. App'x. at 711 ("[T]he waivers

do not show that there was any offer by Jackson County, acceptance by the property owners or consideration.").

**[11]** Plaintiffs' claims for compensation under statutory entitlement are more akin to social security benefits: something that the government voluntarily and benevolently provides, but that the government can stop providing at any time (assuming the government has complied with the requisite procedural due process). *See, e.g.*, *Hisquierdo*, 439 U.S. at 575-576. Thus, Plaintiffs cannot claim to have certain expectations in compensation under their Measure 37 waivers as a statutory entitlement.

### 3. Right to a Particular Land Use

**[12]** To the extent that the property interest provided under Measure 37 was merely a right to particular land uses, it is analogous to a zoning permit. It is well established that there is "no federal Constitutional right to be free from changes in the land use laws." *Lakeview Dev. Corp. v. City of S. Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990). Therefore, an interest in a particular land use does not constitute a protected property interest, unless the interest has vested in equity based on principles of detrimental reliance.

Plaintiffs' claims to a land use property right under Measure 37 fail for two reasons. First, these claims are not ripe. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). In *Williamson*, a land developer had received the Planning Commission's approval to develop a tract of land into a residential area consistent with the county's zoning regulations. *Id.* at 177. However, the regulation changed a few years later and the Commission refused to approve further development inconsistent with the new regulations. *Id.* at 179-80. The developer brought an action against the Commission, alleging that a taking had occurred. *Id.* at 182. The Supreme Court held that the developer's claim for a taking was not ripe, because he had not "obtained a final

decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor had he utilized the procedures Tennessee provides for obtaining just compensation." *Id.* at 186.

**[13]** Similarly in the present case, the Plaintiffs have not exhausted the available alternative remedies under Measure 49 to determine which land use options are currently available to them. Measure 49 claims to preserve any Measure 37 land use claims if the property owner has "a common law vested right . . . to complete and continue the use described in the waiver." *Compiled as a note after* § 195.305. Plaintiffs also have not sought to determine whether their right to develop their land pursuant to their Measure 37 waivers have vested in equity pursuant to Oregon's *Holmes* factors. *Holmes*, 265 Or at 196-97.[6] Thus, under a land use characterization of Plaintiffs' Measure 37 interest, these claims are not ripe, because Plaintiffs still have potential remedies available under Oregon state law.

**[14]** Second, even if Plaintiffs' claims were ripe, Plaintiffs have not alleged that they detrimentally relied on their Measure 37 land-use waivers. As a result, it is unlikely that Plaintiffs' claims have vested under this theory.

**B. The enactment of Measure 49 did not violate substantive due process.**

Plaintiffs argue that Measure 49 infringes on fundamental rights, thus triggering heightened scrutiny under our substantive due process jurisprudence. Oregon answers that there is no authority for the proposition that economic rights are fundamental; therefore this claim ought to be subjected to ratio-

---

[6]Under *Holmes*, Plaintiffs' Measure 37 property interest in a certain type of land use can vest if the particular Plaintiff has commenced construction that is substantial or has spent substantial costs toward completing the job. *Holmes*, 265 Or at 196-97.

nal basis scrutiny. *See Washington v. Glucksberg*, 521 U.S. 702, 767 n.9 (1997) (Souter, J., concurring in the judgment) (requiring as a threshold requirement for heightened scrutiny "that the interest (or, as the Court puts it, the right) be fundamental before anything more than rational basis justification is required"). We agree with Oregon.

**[15]** Retroactive legislation does not violate substantive due process, "[p]rovided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means . . . ." *Pension Benefit Guar. Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 729 (1984); *see also Dodd v. Hood River Cnty.*, 59 F.3d 852, 864 (9th Cir. 1995) ("There is no denial of substantive due process if the question as to whether the government acted arbitrarily or capriciously is 'at least debatable.' " (citation omitted)).

**[16]** Measure 49's purpose is to "modify . . . Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources." Or. Rev. Stat. § 195.301(2). Based on the high number of claims that had been filed during the three years Measure 37 was in effect, it was rational for the legislature and voters to determine that the cost of Measure 37 was too great, either to the taxpayer or in terms of natural resources. Furthermore, Measure 49 still seeks to provide alternative remedies to Measure 37 claimants. Thus, Measure 49 is based on a rational government interest and does not violate substantive due process.

## C.   The enactment of Measure 49 did not create unconstitutional disparate treatment.

Bowers Plaintiffs[7] argue that Measure 49 imposes unequal

---

[7]The Citizens Plaintiffs raised this argument for the first time on appeal. Generally, we will not consider an issue raised for the first time on appeal. *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Although there are

results that lack any rational relationship to its purpose, and it therefore violates the Equal Protection Clause under the Fourteenth Amendment. Because the regulatory classification under Measure 49 is not based on a suspect class, and because Measure 49 does not implicate fundamental rights (as discussed above), this classification must be evaluated under the "rational basis" standard. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). After review, we conclude that the classification is rational.

Under rational basis review, the Equal Protection Clause is satisfied if: (1) "there is a plausible policy reason for the classification," (2) "the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker," and (3) "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Id.* at 11.

**[17]** Measure 49 seeks to balance the protection of property owners' interests with the preservation of Oregon's natural resources. These both constitute legitimate state interests. Measure 49 changes the calculus of the balance that was previously utilized under Measure 37, but this change was not irrational, "[g]iven the number of Measure 37 claims that were being processed, and the potential costs of those pending claims." *Powell v. Or. Dep't Land Cons. & Dev.*, 243 P.3d 798, 804 (Or. App. 2010). Essentially, "the legislature and the voters decided that it was in the best interest of the state to replace the remedies in all Measure 37 cases, pending and future. Simply put, the retroactive application of Measure 49 was a rational response to the legitimate governmental concerns posed by Measure 37." *Id.*

---

exceptions to this rule, *see id.*, this case does not fall within any of the exceptions. Therefore, this disparate treatment analysis is only applicable to the Bowers Plaintiffs, because the Citizens Plaintiffs cannot now raise this claim.

Plaintiffs argue that Measure 49 was irrational, because it applied blanket standards for relief to landowners with diverse situations, resulting in uneven distribution of the burden of Measure 49. Plaintiffs also argue that Measure 49 is irrational, because some claimants under Measure 37 actually did receive an unaltered Measure 37 remedy in the form of monetary compensation whereas most claimants did not. *See, e.g.*, *English v. Multnomah Cnty.*, 238 P.3d 980 (Or. 2010) (upholding a final judgment of monetary compensation for a landowner under Measure 37).

However, the Supreme Court has also said, "[i]n the area of economic and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by the law are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970). As long as the classification has some rational basis, it will "not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Fritz*, 449 U.S. at 175 (internal quotation marks omitted).

**[18]** In this case, it was not irrational for Oregon to attempt to provide partial remedies under Measure 49, even if these remedies did result in some differences of treatment. The legislature had discretion to determine how best to balance the competing needs of providing some remedies for claimants while still protecting Oregon's resources. Furthermore, there was a rational reason that some claimants received a remedy while others did not. The claims that led to a remedy became final before Measure 49 was passed, and so the Oregon Supreme Court held that such a claim was "extinguished" once it was "reduced to a final judgment." *English*, 238 P.3d at 988. Therefore, because Measure 49 applies to all Measure 37 claims that existed at the time of its enactment and is rationally related to legitimate state interests, Plaintiffs' equal protection claim fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.